# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

REGINALD A. WILLIAMS,     )
                                   )
        Movant,            )
                                   )
     vs.                   )        Case No. 4:07CV852 CDP
                                   )
UNITED STATES OF AMERICA,   )
                                   )
        Respondent.     )

## MEMORANDUM AND ORDER

      Reginald Williams seeks to vacate, set aside, or correct his sentence under
28 U.S.C. § 2255.  Williams was sentenced to seventy-eight months imprisonment
following his conviction by a jury of two counts of hindering prosecution, one
count of obstruction of justice, and one count of making a false statement.
Criminal Case No. 4:04CR336 CDP.  His conviction was affirmed on appeal.
*United States v. Williams*, 177 Fed. Appx. 513 (8th Cir. 2006).

      As ground for his § 2255 relief, Williams alleges that the trial judge was
biased against him and that he was denied his first choice of counsel.  He also
asserts that the government committed misconduct during his trial and allowed
witnesses to perjure themselves in order to secure a conviction.  Finally, Williams
contends that he received ineffective assistance of counsel in numerous respects.

After careful consideration of the parties' filings and evidence, I conclude that Williams's claims are meritless, and I will deny his motion.

## Background

On August 14, 2001, a St. Louis Metropolitan Police Officer received an anonymous tip that a woman named Rolanda was holding crack cocaine at a day care center for a drug dealer named "Dee." The tip was given to Reginald Williams, a St. Louis Metropolitan Police Officer. Williams and two other officers went to the daycare center and arrested Rolanda Watkins, who confessed to holding crack cocaine for Demetrius Childs, who was also known as Dee. Williams searched Watkins's purse and found 44.56 grams of crack cocaine. Watkins was then escorted to a police substation, where Williams directed her to write a confession containing false allegations.

When Watkins received a page from Childs indicating that he was outside the daycare center and wanted Watkins to come outside, Williams and police officer Terrall Carter returned to the center and arrested Childs along with Larry Boyd and Curtis Brown-Bey, who were in Childs's car. None of these individuals had any drugs in their possession, and there were no drugs inside the vehicle. Williams, however, planted several ounces of crack cocaine inside the vehicle and stole $740 in cash from Childs. While Williams's partners were transporting Boyd

to the police station, officer Carter physically assaulted Boyd while the other two officers watched. Williams had no involvement in this assault.

Williams later wrote a police report of the event in which he made several false statements, including that he saw Childs and his passenger with drugs and a scale in their laps. He also failed to report that he recovered the $740 from Childs. Soon after the arrest and report, Williams began to actively seek the prosecution of the three men. Specifically, he contacted the Office of the United States Attorney for the Eastern District of Missouri several times in an effort to have the Assistant United States Attorney bring the case before the Grand Jury in the Eastern District of Missouri. Based on the police report Williams drafted and her own telephone conversations with Williams, the AUSA drafted indictments and plea agreements.

Before the case went before the Grand Jury, however, officer Carter informed the AUSA that Williams was lying about recovering crack cocaine from the three men on August 14. The government decided not to pursue charges against the men, and additional investigation revealed that Williams had not been truthful in several other cases against suspected drug dealers. Williams was later indicted in the United States Court for the Eastern District of Missouri, and pleaded not guilty to charges of depriving citizens of their constitutional rights, possession with intent to distribute in excess of five grams of cocaine base (crack), hindering prosecution, obstruction of justice, and making a false statement.

Williams initially retained N. Scott Rosenblum, John Rogers, and the Rosenblum, Schwartz, Rogers & Glass law firm, but the government discovered that these attorneys and their firm had represented Demetrius Childs as defense counsel on two prior occasions. Because of the conflict of interest, the trial judge, the Honorable Donald J. Stohr, issued an order removing Rosenblum and his firm from representing the defendant. Williams then retained new counsel.

At his jury trial, the government presented evidence of William's prior bad acts under Federal Rule of Evidence 404(b), including Williams's unlawful seizure and use of Michael Watson's cellular telephone after Williams arrested Watson in 1996. The jury found Williams not guilty of two counts of deprivation of citizens' rights and one count of possession of crack with intent to distribute. Williams was found guilty of two counts of hindering prosecution, one count of obstruction of justice, and one count of making a false statement. I sentenced him to seventy-eight months imprisonment.[1]

Williams now moves for relief under § 2255, raising several grounds:

1. He was denied counsel of his choice, in violation of his Sixth Amendment rights.

2. He received ineffective assistance of counsel in several respects. First,

---

[1] Judge Stohr presided over Williams's trial, but the case was transferred to me for sentencing.

he asserts that counsel failed to apprise the trial judge of prosecutorial and juror misconduct. Williams also makes general allegations of ineffective assistance, and alleges that his trial counsel coerced him to stipulating to facts that were not true, failed to cross-examine witnesses on points Williams would have raised, and failed to object to false and fabricated evidence being admitted at trial. Finally, he alleges that his appellate counsel was ineffective because counsel failed to raise various grounds on appeal, and failed to communicate with Williams.

3-5. Several government witnesses committed perjury at his trial, and the government committed misconduct by allowing its witnesses to perjure themselves and by submitting "false and fabricated" evidence.

6. The trial judge was biased against him and erred by admitting 404(b) evidence.

## Issues Raised on Appeal

In his direct appeal, Williams challenged the admission of the Rule 404(b) evidence at his criminal trial. In this motion, Williams essentially tries to re-litigate that issue, although he styles it as an issue of judicial bias. In addition, Williams failed on direct appeal to challenge the removal of his counsel of choice, the witnesses' purported perjury, and the government's alleged misconduct. He cites appellate counsel's ineffective assistance as cause for his failure to raise these issues. However, a defendant may not use a § 2255 motion to re-litigate

claims that have already been considered on appeal, or to raise new claims that could have been raised on appeal but were not, absent a showing of cause and prejudice. *United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir. 2000); *Thompson v. United States*, 7 F.3d 1377, 1379 (8th Cir. 1993); *see also Bousley v. United States*, 523 U.S. 614, 622 (1998); *Grady v. United States*, 44 Fed. Appx. 66 (8th Cir. 2002); *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997). Williams therefore cannot re-litigate the 404(b) issue. He also is barred from bringing his other claims as independent allegations of violations of his rights, unless he can show the requisite cause and prejudice. I will consider these issues in the context of his claims of ineffective assistance of counsel.

### Judicial Bias

Williams contends that the trial judge was biased against him, entitling him to relief. In support of this claim, Williams first cites Judge Stohr's decision to admit the Rule 404(b) evidence of Williams's prior bad acts. However, Williams already challenged the admission of the Rule 404(b) evidence in his direct appeal, and the appellate court affirmed the district court's ruling. *Williams*, 177 Fed. Appx. at 513-14. Specifically, the court concluded that the evidence was admissible under Rule 404(b) because the other instances of Williams's planting drugs and stealing from criminal defendants were "nearly identical to the charged crime, and helped the jury to decide Williams's intent, plan, and method of

operation." *Id.* at 514.  Williams cannot use this § 2255 motion to re-litigate this

issue.  *See United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1980) ("It is well

settled that claims which were raised and decided on direct appeal cannot be

relitigated in a motion to vacate pursuant to 28 U.S.C. § 2255.").  Moreover, the

fact that the trial judge correctly admitted this evidence at Williams's trial

forecloses Williams's argument that this is evidence of Judge Stohr's bias.

Finally, as evidence of the judge's bias, Williams cites an alleged sidebar

conversation between the judge and counsel for the government that Williams

claims he overheard.  According to Williams, the judge admonished the

government, "You all are losing this case!  Either you get it together, or I'll put a

stop to this, right now!"  Williams presents no evidence to support his allegation

that such a conversation occurred, however, and the only evidence before me

shows that it did not occur.  Although I was not the presiding judge at Williams's

trial, I have reviewed the complete transcript of the trial – including the

transcriptions of all sidebar conversations, and I have not found any evidence of

such a conversation.  In addition, Williams's trial counsel denies in a sworn

affidavit that any such conversation occurred.  When considering § 2255 motions,

I need not give weight to conclusory allegations, self-interested characterizations,

or opprobrious epithets.  *See United States v. McGill*, 11 F.3d 223, 225 (1st Cir.

1993).  Because Williams adduces no evidence in support of his claim that Judge

Stohr admonished the government, I will not give weight to it.  Accordingly, the record and files before me conclusively refute Williams's contention that the trial judge was biased.

### Williams's Counsel of Choice

As an additional ground for relief, Williams contends that his Sixth Amendment rights were violated because he was denied counsel of his choice.  As I previously mentioned, Williams is barred from bringing this claim for the first time in his § 2255 motion because he failed to raise it as an issue in his direct appeal.  *See, e.g., McGee*, 201 F.3d at 1023.  I am thus considering it only in the context of his claim of ineffective assistance of counsel.

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To state a claim for ineffective assistance of counsel, Williams must prove two elements of the claim.  First, he "must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  In considering whether this showing has been accomplished, "judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the

time of the alleged error. *Id.* Second, Williams "must show that the deficient performance prejudiced the defense." *Id.* at 687. This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The court need not address both components if the movant makes an insufficient showing on one of the prongs. *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).

When Williams was initially indicted, he retained N. Scott Rosenblum, John Rogers, and the Rosenblum, Schwartz, Rogers & Glass law firm as counsel. It was later discovered, however, that Rosenblum, Schwartz, and their firm had previously represented Demetrius Childs on two separate criminal charges, and had obtained confidential information from him during their representation that might have been relevant during their cross-examination of Childs during Williams's trial. Demetrius Childs was a principal witness for the government in Williams's criminal case, and Judge Stohr disqualified the entire Rosenblum, Schwartz, Rogers & Glass law firm from representing Williams in his criminal case. Criminal Case No. 4:04CR336 CDP [#61]. Williams now challenges that holding, contending that it violated his right under the Sixth Amendment to counsel of his choice.

Williams is correct that a non-indigent criminal defendant's Sixth Amendment rights encompass the right to be represented by the counsel selected

by the defendant. *See generally United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006); *see also Wheat v. United States*, 486 U.S. 153, 159 (1988); *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). However, the right to retain counsel of defendant's choosing is not absolute, *United States v. Gonzalez-Lopez*, 548 U.S. at 152), because the purpose of the Sixth Amendment is to guarantee "an effective advocate for each criminal defendant," not to guarantee the counsel defendant prefers. *Wheat*, 486 U.S. at 159. This guarantee of effective assistance of counsel "includes the right to the assistance of counsel unhindered by a conflict of interest." *United States v. Agosto*, 675 F.2d 965, 969 (8th Cir. 1982) (internal quotation marks and citations omitted), *overruled on other grounds by Flanagan v. United States*, 465 U.S. 259 (1984).

When a conflict of interest exists, a court may disqualify the conflicted attorney. *See Agosto*, 675 F.2d at 969-70. In considering whether to disqualify the attorney, a court must balance "individual constitutional protections, public policy and public interest in the administration of justice, and basic concepts of fundamental fairness." *Id.* at 970 (citing *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975)). However, "any doubt is to be resolved in favor of disqualification." *Id.* (internal quotation marks and citations omitted).

Under the Missouri Rules of Professional Conduct, a conflict of interest exists when an attorney "who has formerly represented a client in a matter"

represents another person "in the same or a substantially related manner in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Mo. Rules of Prof'l Conduct R. 4-1.6.[2] In such circumstances, Rule 4-1.6 prohibits the attorney from representing the new client unless the former client consents in writing. *Id.*

It is clear from the record that such a conflict of interest existed in this case. Specifically, the Rosenblum firm attorneys had previously represented Childs and had obtained confidential information about him that could have been relevant during their cross-examination of him in Williams's case. As a result, counsel might have been tempted to use Childs's confidential information against him during their cross-examination, or they might have failed to conduct a rigorous cross-examination of Childs for fear of misusing his confidential information.

Additionally, Childs indicated that he would not consent to the Rosenblum firm's representation of Williams, but Williams himself indicated that he would have waived his right to the assistance of counsel unhindered by a conflict of interest. This would have allowed Williams to retain Rosenblum, but it would have prevented Rosenblum from thoroughly cross-examining Childs, who was a key government witness. Moreover, Williams's retaining Rosenblum might have

---

[2]Within the United States District Court for the Eastern District of Missouri, the Rules of Professional Conduct to be applied are the Rules of Professional Conduct adopted by the Supreme Court of Missouri, except as otherwise provided by the Court's Rules of Disciplinary Enforcement. Local Rule 12.02.

tainted the "integrity of the judicial proceeding" given the clear conflict of interest, and the courts have a duty to "maintain public confidence in the legal profession." *See id.* at 969. In the face of this clear conflict and the duty of the Court, I cannot conclude that Judge Stohr erred by disqualifying the Williams's counsel. For the same reasons, Williams's appellate counsel was not ineffective for failing to bring this issue on appeal, and Williams's ground for relief is denied.

## Witness Perjury

As his third ground for relief, Williams contends that several witnesses perjured themselves while testifying at trial. As with his previous grounds, Williams could have asserted this issue on direct appeal, but failed to do so. Accordingly, I will only consider it in light of his claim of ineffective assistance of counsel.[3]

Williams first asserts that several St. Louis Metropolitan police officers perjured themselves when they described the events of August 14, 2001. As his proof, Williams contends (1) that the officers were attempting to cover up the fact that officer Carter physically assaulted Larry Boyd, and (2) that their testimony at trial and before the grand jury was different. Second, Williams also alleges that another witness, Michael Watson, perjured himself when he testified that Williams

---

[3]Although not raised as an official point in his direct appeal, Williams did challenge the credibility of the witnesses at his trial. The Court of Appeals denied that contention, however, stating that it "was the jury's duty to assess the credibility of the witnesses providing the Rule 404(b) evidence." *United States v. Williams*, 177 Fed. Appx. 513, 514 (8th Cir. 2006).

had planted drugs and stolen his cellular telephone in 1996. According to Williams, this witness lied about his cellular telephone bill, so he lied about all his other testimony.

I have reviewed the trial transcripts in full, and they reveal that counsel for Williams thoroughly cross-examined all of these witnesses in order to attack their credibility. Specifically, counsel questioned the police officers about the assault and their changing testimony before the grand jury and at trial. Counsel for the government also questioned the officers about the assault. Williams's counsel also thoroughly cross-examined Watson, asking him about his prior convictions for drug trafficking and about his false plea of guilty to his arrest by Williams in 1996. Essentially, Williams adduces no evidence of these witnesses' perjury, but instead attacks their credibility using the same methods his trial counsel used. However, the credibility of a witness – including whether the witness's testimony is fabricated – is a ultimately question for the jury to assess. *United States v. Jourdain*, 433 F.3d 652, 659-60 (8th Cir. 2006). One jury already heard these witnesses testify and decided whom to believe, and Williams cannot point to any reason why their finding should be challenged. Finally, because the question of witness credibility is a jury question, Williams's appellate counsel was not ineffective for failing to address it on appeal. Williams's third ground for relief is accordingly denied.

## Prosecutorial Misconduct

Williams connects his next ground for relief with his previous one, contending that counsel for the government committed misconduct by allowing the witnesses to perjure themselves. Williams submits that the prosecution displayed its intent to rely on the perjured testimony of witnesses by filing a motion in limine and by granting witnesses immunity from prosecution. Finally, he asserts that Judge Stohr realized that the witnesses were perjuring themselves and admonished the government's counsel. He also raises as an independent ground for relief his contention that the prosecution submitted false and fabricated evidence. Williams did not bring any of these claims in his direct appeal, so he must now show that counsel was ineffective for failing to appeal them. *See, e.g., McGee*, 201 F.3d at 1023. None of these grounds show prosecutorial misconduct, or that the government was attempting to have fabricated evidence admitted, however, and counsel was not ineffective for failing to raise them on appeal.

First, the record reveals that the government's motion in limine, which Williams asserts is evidence of the government's misconduct, was filed when Mr. Rosenblum was Williams's defense counsel. This motion sought to prevent improper questions by Rosenblum, as the government was concerned that Mr. Rosenblum would ask questions during cross-examination for which there was no factual basis. This motion was never decided, because Mr. Rosenblum was

disqualified from the case. In any event, such questions are improper, *see United States v. Barta*, 888 F.2d 1220, 1224-25 (8th Cir. 1989), and the government neither committed misconduct nor displayed an intent to allow witness perjury by filing such a motion.

Similarly, the government's decision to grant certain witnesses immunity from prosecution does not indicate that the government intended the witnesses to perjure themselves to secure Williams's conviction. These witnesses were only given immunity from prosecution in federal court for their actions on August 14, 2001, including officer Carter's assault on Boyd. Moreover, defense counsel cross-examined each of them thoroughly about their grant of immunity. The jury was free to disregard these witnesses' testimony because of their grant of immunity. In any event, the sole authority to grant immunity is given to the executive branch, not the judicial, 18 U.S.C. § 6003, and courts do not review a prosecutor's immunization decisions absent a clear showing of abuse of discretion violating the due process clause. *See, e.g., United States v. Frans*, 697 F.2d 188, 191-92 (8th Cir. 1983) (defendant must make a substantial evidentiary showing that the government intended to distort the judicial fact-finding process before a court will depart from the strong tradition of deference to prosecutorial discretion). Williams has made no such showing, absent his conclusory allegations. This is

insufficient, and I will not review the government's immunization decision.  *See id.*

As additional proof of the prosecution's misconduct, Williams again cites the alleged sidebar conversation between Judge Stohr and the government, when Judge Stohr allegedly scolded counsel for the government.  There is no evidence that this conversation occurred; in fact, all the evidence shows that it did not occur.  Accordingly, it is not evidence of the government's misconduct.

Williams also argues that the government committed misconduct by knowingly submitting false and fabricated evidence during his trial.  Although listed as a ground for relief, this claim essentially is another allegation of prosecutorial misconduct, so I will consider it as such.  Specifically, Williams contends that the government submitted a fabricated cellular telephone bill during Michael Watson's testimony.  Williams submits that this telephone bill is demonstrably fabricated because it lists $1700.00 as the total amount due, while Williams claims that the correct amount due was $23.00.  There is no evidence to support Williams's allegation that this document was altered or fabricated.  In fact, the telephone bill was a certified business record of Southwestern Bell, to which Williams's counsel made no objections at trial.  Even if the amount of the bill had been incorrect, however, the bill's importance was the fact that it evidenced Williams's or his partner's having used the phone after Watson was arrested and in

jail.  In his motion, Williams does not challenge the dates or times of the calls, only the amount.  Because he submits no evidence that the bill was altered, Williams fails to show prosecutorial misconduct.  For the same reasons, any objection by Williams's trial counsel would have been unsuccessful, so counsel was not ineffective for failing to object.  *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).

Under the same ground for relief, Williams contends that the government committed misconduct by submitting "lost evidence into trial."  He refers to the fact that the government cross-examined him on whether he ordered evidence recovered from the August 14, 2001 arrest to be destroyed.  By testifying, however, Williams opened the door to the government's questioning his credibility, including questioning whether he ordered the destruction of evidence that was significant to his criminal case.  *See* Fed. R. Evid. 611(b) ("Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.").  Williams was given a chance to deny the fact that he destroyed the evidence, and the jury was free to believe him or disregard his statements.  This does not show prosecutorial misconduct, and it does not show ineffective assistance of counsel for failing to object to these questions.

Because none of these grounds shows prosecutorial misconduct, Williams's counsel was not ineffective for failing to raise it on appeal.  Williams's fourth and fifth grounds for relief are denied.

## Other Claims of Ineffective Assistance of Counsel

Williams cites numerous other examples of alleged ineffective assistance of counsel as grounds for relief.  First, Williams contends that counsel failed to inform the judge of the government's misconduct, and of juror misconduct. Williams next asserts that counsel forced him to stipulate to incorrect facts; failed to object to the "false and fabricated evidence" as discussed above; and failed to cross-examine officer Carter about Carter's violations of police department policy. He then makes a general accusation of ineffective assistance of counsel.  Finally, Williams maintains that his appellate counsel failed to stay in communication with him and failed to bring any of the previous issues on appeal.  None of these grounds establishes a right to relief.

Several of Williams's claims arise from accusations that have no basis or support in the record.  As I previously mentioned, I need not give weight to conclusory allegations, self-interested characterizations, or opprobrious epithets when considering a § 2255 motion, and I will not give weight to these accusations. *See McGill*, 11 F.3d at 225.  Specifically, Williams first asserts that an Assistant United States Attorney told Williams's first counsel, Scott Rosenblum, to "price

[Williams] out of a defense," and later stated, "now that we got Rosenblum off the case, we'll surely win," when Rosenblum was disqualified. He alleges that counsel was ineffective for failing to inform Judge Stohr of the prosecution's statements. As with his other accusations, there is no evidence to support these allegations. But even if the government made these statements, Williams cannot show prejudice for his counsel's failure to inform Judge Stohr. *See Strickland*, 466 U.S. at 687. The record reflects that Rosenblum was disqualified because of a clear conflict of interest, not because of any of the government's alleged machinations. Because Rosenblum would have been disqualified for his conflict of interest, Williams cannot show prejudice for counsel's failure to apprise Judge Stohr of the AUSA's alleged statements. *See Strickland*, 466 U.S. at 687.

Williams makes two more allegations of government misconduct that have no basis or support in the record. First, Williams accuses a former AUSA of high-fiving a government witness – who was also an AUSA – in front of the jury. There is simply no evidence to support this accusation. Before me are affidavits from counsel for the government, Williams's trial defense counsel, and both parties to the alleged high-five, and each affiant denies that this event occurred. I have also reviewed the entire transcripts and cannot find any evidence that this event occurred. Second, Williams alleges that a St. Louis Police Lieutenant met with a juror during Williams's trial, and improperly consulted with him. As with

his other accusations, Williams presents no evidence to support this statement. He does not submit an affidavit from the juror, with whom Williams claims to have discussed the incident after the trial. Instead, the police lieutenant whom Williams accuses has submitted an affidavit in which he denies ever speaking with the juror. Williams's trial counsel also swear in their affidavits that Williams never told them about these statements or events during trial. Counsel cannot be ineffective for failing to object when Williams never informed counsel of Williams's concerns. Because Williams adduces no evidence that these events occurred or that these statements were made, I will give them no weight. *See McGill*, 11 F.3d at 225.

Williams next contends that counsel coerced him to stipulate to facts that were not true. The record reveals that Williams stipulated to the following facts:

15. Government's Exhibit 51 are telephone billing records from Southwestern Bell relative to a cellular telephone (314) 603-5932 for an account in the name of Sandra Williams. Government's Exhibit 51 is a record made in the normal course of the activities of Southwestern Bell, was made as a part of the regular practice of Southwestern Bell, was made at or near the time of the events reflected in the file, and would be so identified by the custodian of records of Southwestern Bell;

16. Sandra Williams, if called to testify, would state that she opened the cellular telephone account in Government's Exhibit 51 for Michael Watson in 1996, and never used the telephone herself;

17. On July 19, 1996, Michael Watson was arrested by St. Louis Metropolitan Police Department Officers Lorenzo Clark and Reginald Williams. After that date, cellular telephone (314) 603-5932 was

used by St. Louis Metropolitan Police Department Officers Lorenzo
Clark and Reginald Williams to call various friends and associates of
theirs.

Williams's main objection to these stipulations appears to arise from his
contention that he was not really using Watson's cellular phone. The first
stipulation is a business records stipulation, and Williams neither contends nor
presents evidence that the agent for Southwestern Bell would have been unable to
authenticate the record. Without having any basis to object to the telephone
records, any objection by Williams's counsel would have been unsuccessful, and it
is well established that counsel cannot be ineffective for failing to make a
meritless argument. *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir.
1994). Similarly, Williams presents no evidence that Sandra Williams would have
testified differently had she been called to testify at Williams's trial, so counsel
would have had no basis to object to this stipulation as well.

The record reveals that counsel stipulated to the third paragraph in an effort
to mitigate the damage live testimony on that subject might have had. In
particular, the Federal Bureau of Investigation had investigated the calls made
from Watson's cellular telephone after Watson was in jail, and determined that
Williams and his partner had been using Watson's phone to communicate with
their mistresses. The government was prepared to bring this evidence in court
through live testimony, including testimony about Williams's infidelity, but

counsel stipulated to the fact instead so that the jury would not hear such testimony. Indeed, rather than referring to the particular mistress Williams contacted, the stipulation refers to Williams's calling "various friends and associates." It cannot be ineffective assistance of counsel for an attorney to stipulate to damaging facts in an effort to mitigate their harmful effect. *See Strickland*, 466 U.S. at 687 (to show ineffective assistance of counsel, movant must show "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment"). Moreover, the evidence about Williams's using the phone to contact his mistress was only revealed when Williams took the stand and lied about using the phone. Counsel attempted to mitigate this by stipulating to the facts, but Williams himself made it an issue when he chose to lie.

Williams next contends that counsel was ineffective because counsel should have cross-examined officer Carter on one violation of police policy – placing Larry Boyd in the back seat of an unmarked car. It is unclear whether Williams wanted counsel to cross-examine Carter on this policy violation instead of cross-examining Carter about the assault on Larry Boyd, or in addition to it. In any event, I have reviewed the transcript, and Williams's counsel thoroughly cross-examined Officer Carter about the assault. Counsel also cross-examined the officers who witnessed the assault and did nothing to protect Boyd about their

actions. The fact that officer Carter physically assaulted a handcuffed prisoner while two other officers watched and did nothing to stop it was surely more damaging to these witnesses' credibility than the fact that they placed Boyd in an unmarked car. Thus, Williams cannot show that counsel was ineffective or that Williams suffered any prejudice because of counsel's failure to cross-examine the witnesses about this other policy violation. *See id.* at 686-87.

Finally, Williams makes a general allegation that trial counsel were ineffective. Such general claims of ineffective assistance of counsel do not entitle him to relief, however. *See Davis v. Untied States*, 358 F.2d 360, 362 (8th Cir. 1966) (rejecting § 2255 movant's general claim of "incompetency of his . . . counsel" as frivolous at best). Williams also contends that appellate counsel was ineffective because counsel failed to raise each of the previous issues, and failed to communicate with him. As discussed above, none of these grounds entitled Williams to relief, so counsel was not ineffective for failing to raise them. *See Rodriguez*, 17 F.3d at 226. Additionally, Williams's contention that counsel failed to communicate with him is nothing more than a conclusory accusation, belied by his own statements. Williams presents no evidence to support this ground, and the government, in its response to this motion, attached two items of evidence that reveal it to be untrue. First, Williams's appellate counsel submits an affidavit in which he details all the communications he had with both Williams

and his family. It reveals that counsel communicated frequently with Williams, both by letter and on the telephone. Second, the government submits a letter from Williams to his appellate counsel, in which Williams writes that he has received and reviewed the appellate brief counsel drafted. Williams also thanks counsel for his hard work, and expresses his satisfaction with the brief. None of this supports Williams's contention that appellate counsel failed to communicate with him. Accordingly, Williams has failed to establish ineffective assistance of counsel, and this ground for relief is denied. *See McGill*, 11 F.3d at 225.

## Evidentiary Hearing and Certificate of Appealability

I will not hold an evidentiary hearing on this motion. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks and citation omitted). "No hearing is required, however, wehre the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Id.* (internal quotation marks and citation omitted). As I discussed above, the record and files before me conclusively reveal that Williams is not entitled to relief. Additionally, I will not issue a certificate of appealability, because Williams has not made a substantial showing of the denial of a federal constitutional right. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.

1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings).

For the reasons stated above, Williams's § 2255 motion will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Reginald A. Williams's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [#1] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, because Williams has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 28th day of July, 2010.